IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CENTER FOR BIOLOGICAL DIVERSITY,**
**et al.,**

       **Plaintiffs,**

**v.**                                       **CIV 03-0252 LFG/LAM**

**GALE NORTON, in her official capacity as**
**Secretary of the Interior, et al.,**

       **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion to Strike Extra-Record Declarations* (*Doc. 39*) (hereinafter, "Defendants' Motion to Strike") which seeks to strike the extra-record declarations of Michael Edward Norte[1] (*Doc. 31*) (hereinafter, "Norte Declaration") and Christopher Frissell[2] (*Doc. 32*) (hereinafter, "Frissell Declaration") submitted by Plaintiffs in support of their challenge to an administrative agency decision.[3] Defendants' Motion to Strike also seeks to have the Court strike all references to the Frissell Declaration in Plaintiffs' submissions on the merits of this case. Also before the Court is *Plaintiffs' Motion to Consider Extra-Record Evidence* (*Doc. 47*) which seeks to have the Court consider the Norte Declaration, the Frissell Declaration, draft

---

[1]Michael Edward Norte is a catch and release fly-fisherman who fishes for native trout in New Mexico and other western states. *Norte Declaration, ¶ 3.*

[2]Christopher Frissell, Ph.D., is a research scientist in the field of freshwater ecology and conservation biology, with an emphasis on trout and salmon of the western United States. *Frissell Declaration, ¶ 1.*

[3]Plaintiffs submitted the Norte Declaration and the Frissell Declaration to the Court in support of their Petition for Review of Agency Action (*Doc. 29*).

minutes of a meeting of the New Mexico State Game Commission held on August 18, 2004 (*Exhibit C to Doc. 48*) (hereinafter, "Draft Minutes"), and a newspaper article from the Albuquerque Journal dated August 29, 2004 (Exhibit B to *Doc. 48*) (hereinafter, "Journal Article") as extra-record evidence in connection with its review of the agency decision. The Court has reviewed both motions, the parties' submissions on the motions (*Docs. 40, 50, and 49*) and relevant law.[4] The Court **FINDS** that each of the motions should be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

## I. BACKGROUND

This action challenges a finding (hereinafter, "Finding")[5] by the U.S. Fish and Wildlife Service (hereinafter, "FWS") that listing of the Rio Grande cutthroat trout (hereinafter, "RGCT") as threatened or endangered under the Endangered Species Act (hereinafter, "ESA")[6] is not warranted. Plaintiffs contend that Defendants violated the ESA by failing to list the trout, and that Defendants' actions were arbitrary and capricious, an abuse of discretion, not in accordance with law, and in violation of procedural requirements of the Administrative Procedure Act, 5 U.S.C. §§ 701-706. *See Complaint for Declaration and Injunctive Relief* (*Doc. 1*). In their Motion to Consider Extra-

---

[4] Defendants failed to file and serve a timely reply in support of their Motion to Strike which constitutes consent that briefing on the motion is complete, pursuant to D.N.M.LR-Civ. 7.1(b). Additionally, Defendants failed to file a response in opposition to Plaintiffs' Motion to Consider Extra-Record Evidence even though Defendants opposed consideration of the Frissell Declaration and the Norte Declaration in their Motion to Strike. While the failure to file and serve a timely response in opposition to a motion constitutes consent to grant the motion pursuant to D.N.M.LR-Civ. 7.1(b), the Court will, nevertheless, review and decide Plaintiffs' Motion to Consider Extra-Record Evidence on its merits.

[5] The Finding was published as a Proposed Rule in the Federal Register on June 11, 2002. *See Endangered and Threatened Wildlife and Plants; Candidate Status Review for Rio Grande Cutthroat Trout*, 67 Fed. Reg. 39936 (proposed June 11, 2002) (to be codified at 50 C.F.R. pt. 17).

[6] 16 U.S.C. §§ 1531-1544.

Record Evidence, Plaintiffs ask the Court to consider extra-record evidence, in addition to the administrative record of the listing decision, in deciding this case on the merits. This extra-record evidence consists of the Norte Declaration, the Frissell Declaration, the Draft Minutes and the Journal Article.[7] Although Defendants initially opposed consideration of the Norte Declaration, the parties have agreed that the Court may consider the Norte Declaration for the limited purpose of establishing Plaintiffs' standing.[8] Thus, the Norte Declaration is no longer at issue and the Court will allow it to be considered solely with respect to the issue of standing. As noted above, while Defendants have opposed consideration of the Frissell Declaration in their Motion to Strike, they have not filed a response opposing consideration of the Draft Minutes and the Journal Article.[9] To fully decide both motions, the Court will determine whether to consider the Frissell Declaration, the Draft Minutes and the Journal Article as extra-record evidence.

## II. DISCUSSION

Defendants contend that the Court's review of the challenged listing decision should be limited to the administrative record developed during the administrative process. Judicial review of administrative agency decisions "is generally limited to review of the administrative record." *Custer County Action Association v. Garvey*, 256 F.3d 1024, 1027 n. 1 (10th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002), citing *Federal Power Comm'n. v. Transcontinental Gas Pipe Line Corp.*,

---

[7]The Norte and Frissell Declarations, the Draft Minutes and the Journal Article were all created after the Finding was made and they are not part of the administrative record in this case.

[8]*See* Defendants' Memorandum in Support of Motion to Strike Extra-Record Declarations (*Doc. 40*) at 1 n.1; Plaintiffs' Opposition to Defendants' Motion to Strike Extra-Record Declarations (*Doc. 50*) at 1; and Plaintiffs' Memorandum in Support of Motion to Consider Extra-Record Evidence (*Doc. 49*) at 4.

[9]*See supra.* note 4.

423 U.S. 326, 331 (1976). "Reviews of agency action in the district courts must be processed *as appeals*," considering, with limited exceptions, the record that was before the agency during the administrative process. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). "The circumstances which warrant consideration of extra-record materials are extremely limited." *Custer County Action Association* at 1027 n. 1, citing *American Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985) (internal quotations omitted). The Tenth Circuit has recognized five limited exceptions to the general rule that judicial review of an agency decision is limited to review of the administrative record. These exceptions exist when:

> (1) . . . the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials . . .; (2) . . . the record is deficient because the agency ignored relevant factors it should have considered in making its decision . . .; (3) . . . the agency considered factors that were left out of the formal record . . .; (4) . . . the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues . . .; and (5) . . . evidence coming into existence after the agency acted demonstrates that the actions were right or wrong . . . .

*American Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985), *cert. denied*, 476 U.S. 1158 (1986). *See also Franklin Savings Association v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1137-1138 (10th Cir. 1991), *cert. denied*, 503 U.S. 937 (1992).

### A. Frissell Declaration

Plaintiffs' challenge to Defendants' decision not to list the RGCT as a threatened or endangered species is based, in part, on Plaintiffs' allegations that Defendants violated the ESA by ignoring the best scientific and commercial data available, contrary to 16 U.S.C. § 1533(b)(1)(A).[10] Plaintiffs contend that the Frissell Declaration details relevant scientific evidence which Defendants

---

[10] *See Complaint for Declaration and Injunctive Relief* (*Doc. 1*).

failed to consider in making their decision. This evidence relates to the overall extinction probability of the RGCT species, the threat of wildfire and other catastrophic events to the RGCT, and the ineffectiveness of barriers in protecting the RGCT from nonnative fish and whirling disease.[11] *See* Frissell Declaration, ¶¶ 4, 7, 8, 10, 13. Plaintiffs argue that the Frissell Declaration warrants consideration as extra-record evidence in this case because it falls within the exception where an agency ignores relevant factors it should have considered in making its decision. A review of the Finding and the Frissell Declaration convinces the Court that circumstances do not warrant application of this exception to the Frissell Declaration.

In its analysis in the Finding, FWS evaluated populations of RGCT in New Mexico and Colorado. Because FWS determined that ecological factors affecting persistence vary among populations, it categorized RGCT populations based on their vulnerability to threats affecting long-term persistence. 67 Fed. Reg. 39937. FWS identified thirteen "core" populations of RGCT deemed populations most likely to persist. 67 Fed. Reg. 39937-39939. The criteria for these core populations were "purity, population stability and security from invasion by nonnative salmonids." 67 Fed. Reg. 39937. Purity was genetic purity, population stability was having a population of at least 2,500 total fish, and security from invasion was having a population exclusive of nonnative salmonids secured by a barrier. 67 Fed. Reg. 39937-39939.

In its analysis in the Finding, FWS considered the risk of extinction to the RGCT by catastrophic events and, while acknowledging the vulnerability of RGCT in isolated populations to extinction through catastrophes (*e.g.*, fires and massive flooding), FWS concluded that if a catastrophic event (*e.g.*, fire, drought) results in the extirpation of one or more of thirteen identified

---

[11]"Whirling disease" is a parasitic infection that infects fish. *See* 67 Fed. Reg. 39942-39943.

core populations, state and federal agencies are capable of replacing the fish with hatchery fish or fish transplanted from another pure population. 67 Fed. Reg. 39940-39941. With respect to the specific threat of wildfires, FWS viewed the geographic distribution of the thirteen core populations as a survival advantage concluding that:

> Over the next 10 to 20 years it is possible that a small number of RGCT populations will be lost to fire; however, we do not believe that such a loss will affect the long-term persistence of the RGCT *because the populations are widely distributed* and loss of RGCT populations that contain nonnatives provides an opportunity to reestablish pure RGCT populations. The Service cannot determine if fire is a threat to the 13 pure, stable, and secure populations. Fire is unpredictable and we have no way of determining where or with what intensity a fire may burn because so many variables are involved. New Mexico is in the midst of a drought and fire can be a threat. *Because the populations are spread out across the landscape and are not grouped together, the chances of more than one population being affected is reduced.* As mentioned above, if catastrophic fire does occur, it provides an opportunity to reintroduce pure RGCT trout into streams that had been dominated by nonnative trout and expand the range of RGCT.

67 Fed. Reg. 39944 (emphasis added). Plaintiffs regard the FWS analysis of these issues as deficient based on the Frissell Declaration. Dr. Frissell claims the analysis of catastrophic events is flawed because, in his opinion, FWS should have:(1) statistically estimated the probability of wildfire affecting the thirteen core basins using available data or, in the alternative, considered the recorded incidence of catastrophic extinction of the greenback cutthroat trout, a closely-related subspecies; and (2) calculated the overall extinction probability of the RGCT based on the annual probability of local population extinctions cumulated over time, instead of assuming that overall extinction by a single, catastrophic event is unlikely because the local populations are separated in space. Frissell Declaration, ¶¶ 7, 8. Dr. Frissell also criticizes as "unsupported" and "unexamined" the FWS

conclusion that local populations of RGCT destroyed by catastrophe can be replaced by government agencies, citing an unspecified "published record of high failure probability for such hatchery-based translocation and rescue actions." *Frissell Declaration, ¶ 9*.

With respect to the determination of which individual RGCT populations qualified as "core" populations, *i.e.,* populations deemed most likely to persist in FWS' analysis, FWS concluded that 2,500 fish in a population was "a number that will ensure long-term persistence (*i.e.*, reduce the risks associated with small population size alone)."[12] 67 Fed. Reg. 39938. Dr. Frissell contends this conclusion is flawed because it ignores the impact of catastrophic events in determining whether 2,500 is a suitable population size. *Frissell Declaration, ¶4*. Dr. Frissell claims that evidence in the conservation literature suggests that for most vertebrates a population of 7,000 or more is necessary to maintain genetic diversity for species subject to catastrophic events. *Frissell Declaration, ¶ 10*. Dr. Frissell also challenges FWS' reliance on barriers to provide security for the identified core populations. Although FWS acknowledged some problems related to the effectiveness of barriers in the Finding,[13] Dr. Frissell contends that natural and artificial barriers are only partially effective in preventing the invasion of nonnative fish and disease. *Frissell Declaration, ¶ 13*.

Finally, with respect to whirling disease, FWS concluded that

> [a]lthough WD is a potential threat to RGCT, . . . [it] is not a threat to the 13 pure, stable, and secure [core] populations because these populations are located in high-elevation, headwater streams that typically have cold water and low levels of sedimentation limiting

---

[12]FWS noted that "[a]lthough larger populations are most likely incrementally 'safer,' in the absence of specific work on RGCT, we determined that 2,500 individuals is a reasonable number that falls within the range suggested for other salmonids." 67 Fed. Reg. 39938.

[13]67 Fed. Reg. 39942.

7

> T. tubifex populations and infection rates from TAMS.[14]  Although
> RGCT is susceptible to infection there has not been a documented loss
> or decline in population number due to WD in a wild RGCT
> population.

67 Fed. Reg. 39943.  Dr. Frissell claims this analysis is flawed because FWS failed to analyze whether streams containing RGCT have conditions less favorable to whirling disease, namely colder temperatures and low amounts of sediment.  *Frissell Declaration, ¶ 14*.  Dr. Frissell contends that many unidentified streams with which he is familiar in comparable mountain ranges north of the range of RGCT sustain temperatures and sediment conditions conducive to tubifex worms.  *Id.*

The Frissell Declaration fails to show that FWS ignored relevant factors it should have considered in making its listing decision on the RGCT.  The Finding shows that FWS considered the issues of extinction probability, the threat of catastrophic events to the RGCT, and the ineffectiveness of barriers in protecting the RGCT from nonnative fish and disease, but that it analyzed these issues differently than Dr. Frissell and reached different conclusions than Dr. Frissell.  Therefore, the Court finds that the Frissell Declaration does not qualify for consideration as extra-record evidence under the limited exception where an agency ignores relevant factors that it should have considered in making its decision.  The Frissell Declaration is essentially an expert's opinion that conflicts with the analysis and conclusions of FWS, and Plaintiffs' submission of the Frissell Declaration for extra-record consideration is essentially an effort to have the Court consider a conflicting expert opinion which is not part of the administrative record.  The Court finds no basis for considering this expert opinion from outside the record.  "It is well established that agencies are entitled to rely on their own

---

[14]T. tubifex is an aquatic worm that serves as an alternate host for whirling disease spores.  After about 3.5 months in the gut of the worms, the spores transform into TAMS, which is an abbreviation for "Triactinomyons."  *See* 67 Fed. Reg. 39943.

experts so long as their decisions are not arbitrary and capricious." *Lee v. United States Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004) (internal quotations and citations omitted). Accordingly, the Court will **GRANT** Defendants' motion to strike the Frissell Declaration and to strike all references to the Frissell Declaration in Plaintiffs' submissions on the merits of this case, and will **DENY** Plaintiffs' motion to consider the Frissell Declaration as extra-record evidence.

### B.  Draft Minutes and Journal Article

In addition to the Frissell and Norte Declarations, Plaintiffs have asked the Court to consider the Draft Minutes and the Journal Article as extra-record evidence. The Draft Minutes consist of copies of pages 1, 12, 13, 14 and 15 of draft minutes of a meeting of the New Mexico State Game Commission held on August 18, 2004. The Draft Minutes show that the subject of piscicides, fish toxicants used in the restoration of native fish, was discussed at the meeting and that a motion was approved "to disallow the Department to continue use of chemicals for fish population management and that we search and seek alternative ways of managing fisheries within the state." *Draft Minutes, 15*. The Draft Minutes also suggest that the Commission may allow fish toxicants to be used in the future in select circumstances.[15]

The Journal Article is a copy of a newspaper article from the Albuquerque Journal dated August 29, 2004, on the subject of the New Mexico State Game Commission meeting on August 18, 2004. The Journal Article states that Larry Bell, the assistant regional director of external affairs for the U.S. Fish and Wildlife Service, told the Commission at the meeting with reference to the fish

---

[15]According to the Draft Minutes, after the motion disallowing the use of piscicides was adopted, Commission Chairman Riordan, who voted for the motion, stated, "We're asking and directing that we go ahead and look at some alternatives and we're not closing the door on this, we're closing the door on this on the Animas Creek situation. If you have some other necessary emergency issues, bring it back to the Department." *Draft Minutes, 15*.

poison antimycin "that the state's use of the poison is probably the leading reason the Rio Grande cutthroats are not already on the federal Endangered Species List." *Journal Article, 1*. The Draft Minutes do not include this statement but do reflect that Mr. Bell was present at the August 18th meeting and gave public comment in support of the use of the continued use of piscicides.[16]

Plaintiffs argue that the Draft Minutes and the Journal Article should be considered as extra-record evidence because they fall within the exception for "evidence coming into existence after the agency acted [that] demonstrates that the actions were right or wrong." *American Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985), *cert. denied*, 476 U.S. 1158 (1986). Plaintiffs argue that piscicides have been heavily used by the State of New Mexico to eliminate nonnative species and restore the RGCT and imply that the discontinuance of use of these poisons by the State will hamper protection and restoration of the RGCT. Plaintiffs contend that the Draft Minutes and the Journal Article demonstrate that the Finding was wrong.

Assuming, without deciding, that the Draft Minutes and the Journal Article are evidence the Court could consider in deciding the merits of this case, the Court does not find that these materials fall within the exception for extra-record evidence that demonstrates the Finding was right or wrong. The Court acknowledges that the use of piscicides is a relevant issue. In the section of the Finding on "Public Sentiment," FWS discussed the use of piscicides and concluded that public resistance to the use of fish toxicants could undermine stream restoration efforts for the RGCT. *67 Fed. Reg. 39945*. Citing several educational programs, FWS concluded that "the public must be educated and support range expansion of RGCT, or restoration efforts could be undermined." *67 Fed. Reg. 39945*. However, neither the Draft Minutes nor the Journal Article demonstrates that the Finding was wrong.

---

[16]*Draft Minutes, 13*.

Instead, they merely document action taken by the State Game Commission that could potentially adversely affect RGCT stream restoration projects.  This action reflects public resistence to the use of piscicides acknowledged in the Finding.  The Draft Minutes and the Journal Article do not clearly establish that the Finding was wrong.

### III.  CONCLUSION

Based on the foregoing, the Court concludes that the Frissell Declaration, the Draft Minutes and the Journal Article do not qualify for consideration as extra-record evidence under the limited exceptions recognized by the Tenth Circuit.  Based on the parties' agreement, the Norte Declaration may be considered as extra-record evidence on the limited issue of standing.

**IT IS THEREFORE ORDERED** that *Defendants' Motion to Strike Extra-Record Declarations* (*Doc. 39*) is **DENIED** and *Plaintiffs' Motion to Consider Extra-Record Evidence* (*Doc. 47*) is **GRANTED** with respect to the Norte Declaration and the Court will consider the Norte Declaration as extra-record evidence for the limited purpose of establishing Plaintiffs' standing in this case.

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Extra-Record Declarations* (*Doc. 39*) is **GRANTED** and *Plaintiffs' Motion to Consider Extra-Record Evidence* (*Doc. 47*) is **DENIED** with respect to the Frissell Declaration, and the Court will not consider the Frissell Declaration as extra-record evidence in connection with its review of the agency decision.

**IT IS FURTHER ORDERED** that all references to the Frissell Declaration in Plaintiffs' submissions on the merits of this case **are stricken**.

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion to Consider Extra-Record Evidence* (*Doc. 47*) is **DENIED** with respect to the Draft Minutes and the Journal Article and the Court will

not consider these materials as extra-record evidence in connection with its review of the agency decision.

**IT IS SO ORDERED.**

_____
**Lourdes A. Martínez**
**United States Magistrate Judge**