IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CENTER FOR BIOLOGICAL DIVERSITY,
et al.,

                                  Plaintiffs,

v.                                                    No. CIV 03-252 LFG/LAM

GALE NORTON, in her official capacity as
Secretary of the Interior, et al.,

                                  Defendants.

**MEMORANDUM OPINION AND ORDER**

**Introduction**

      THIS MATTER is before the Court on Plaintiffs' (Center for Biological Diversity, et al.) Objections [Doc. No. 56] filed January 6, 2005, to the Magistrate Judge's Memorandum Opinion and Order [Doc. No. 53], entered December 22, 2004. The Magistrate Judge's decision resolved two related motions: Defendants' Motion to Strike Extra-Record Declarations [Doc. No. 39], and Plaintiffs' Motion to Consider Extra-Record Evidence [Doc. 47]. The four pieces of extra-record evidence initially at issue were a declaration of Michael Edward Norte, a catch and release fly-fisherman; a declaration of Christopher Frissell, Ph.D., a research scientist in the field of freshwater ecology and conservation biology; minutes from an August 18, 2004 meeting of the New Mexico State Game Commission; and a newspaper article published on August 29, 2004 in the Albuquerque Journal regarding the State Game Commission meeting. In support of their Petition for Review of

1

Agency Action [Doc. No. 29], Plaintiffs submitted these documents as extra-record evidence that was not part of the administrative record. [Doc. Nos. 31, 32, and Exs. B and C to Doc. No. 48.]

The Magistrate Judge's Memorandum Opinion granted and denied both parties' motions in part.[1] The Honorable Lourdes A. Martinez granted Plaintiffs' request to consider Mr. Norte's declaration but limited to the purpose of establishing Plaintiffs' standing in this case.[2] The Magistrate Judge denied Plaintiffs' request to consider as extra-record evidence Mr. Frissell's declaration, the Game Commission meeting minutes and the related Albuquerque Journal article. Defendants' Motion to Strike addressed only the declarations of Mr. Norte and Mr. Frissell, and the Magistrate Judge granted Defendants' motion to the extent that Mr. Frissell's declaration and references to it would be stricken.

Plaintiffs' objections to the Magistrate Judge's decision are fully briefed. [Doc. Nos. 59, 61.] After careful consideration of the pertinent law, pleadings and attachments, the Court overrules Plaintiffs' objections as to the meeting minutes and related newspaper article, but elects to consider Mr. Frissell's declaration for purposes of background information only. The Court's reasoning follows.

---

[1] The court's automated docketing system mistakenly shows that the Magistrate Judge granted one motion in whole, and denied the other in its entirety. It should reflect that each motion was granted in part and denied in part.

[2] Plaintiffs noted that the Magistrate Judge accepted U. S. Fish & Wildlife Service's ("FWS") concession that Mr. Norte's declaration could be considered as to the issue of standing and argued that if the Magistrate Judge accepted this outright concession, she should have accepted FWS's failure to file a response brief to Plaintiffs' motion as a concession to grant Plaintiffs' entire motion. [Doc. No. 56, n. 1.] However, this Court observes that Plaintiffs, in their response to Defendants' Motion to Strike [Doc. No. 51, p. 1], admitted that they submitted Mr. Norte's declaration as to the sole question of standing. Moreover, a plaintiff cannot rest on mere allegations of injury, but must provide evidence demonstrating standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-62 (1992). Here, the issue as to consideration of Mr. Norte's declaration was uncontested, and the Magistrate Judge was well within her authority to determine that the declaration could be reviewed for purposes of standing. Because the issue regarding Mr. Norte's declaration has been resolved, the Court does not address it further.

**Background**

This matter arises from a challenge brought by Plaintiffs to a finding made by the FWS that listing the Rio Grande Cutthroat Trout ("RGCT" or cutthroat trout) as threatened or endangered under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq.*, was not warranted. FWS's finding was published as a proposed rule in the Federal Register on June 11, 2002, 67 F.R. 39936 (to be codified at 50 C.F.R. pt. 17). On February 25, 2003, Plaintiffs brought the underlying Complaint for Declaration and Injunctive Relief against Defendants regarding the FWS's finding. [Doc. No. 1.]

In determining that the cutthroat trout should not be listed, Plaintiffs assert that FWS violated the ESA by ignoring the best scientific and commercial information available, 16 U.S.C. § 1533(b)(1)(A). In addition, they contend that the FWS finding is arbitrary under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 because FWS failed to consider relevant factors and articulate a rational connection between the facts found and the choice made. [Doc. No. 56.]

Judicial review of administrative decisions involving the ESA is governed by § 706 of the APA; under that section, the reviewing court must determine whether the agency decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the APA, the revising court "shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, it is important to determine what record is properly and ultimately presented to this Court for its review of the agency action. *See* American Mining Congress v. Thomas, 772 F. 2d 617, 626 (10th Cir. 1985) (decision on what materials should be reviewed as part of the record is important where the court acts as a reviewing body rather than an independent decision maker), *cert. denied,* 476 U.S. 1158 (1986).

On September 5, 2003, the FWS served the 20-volume administrative record on Plaintiffs, which consists of 390 documents and more than 7,500 pages. Center for Biological Diversity, et al. v. Norton, et al., 336 F. Supp. 2d 1155, 1157 (D.N.M. 2004). Subsequently, at Plaintiffs' request, FWS supplemented the administrative record with an additional four volumes containing over 2000 pages.[3] Id.

The subject of the present dispute are Plaintiffs' request to include in the Court's review three extra-record pieces of evidence and objections to the Magistrate Judge's denial of their request. In other words, Plaintiffs do not again seek to supplement the administrative record,[4] but instead ask that the Court consider these three extra-record pieces of evidence that did not exist when FWS made its non-listing decision.

## Pertinent Legal Standards

### I.  Objections to a Magistrate Judge's Ruling

The Court previously set out the proper legal standard to apply when a party files objections under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) to a magistrate judge's decision. Center for Biological Diversity, 336 F. Supp. 2d at 1158. When reviewing a question of law, the standard is *de novo* review, and the Court owes no deference to the magistrate's legal conclusions. 28 U.S.C.

---

[3] Plaintiffs previously sought to supplement this administrative record with 26 additional documents that were withheld by the FWS based on the argument that the documents were protected by the deliberative process privilege. Plaintiffs' request was denied, and their objections were overruled. Center for Biological Diversity, 336 F.Supp. 2d 1155.

[4] Courts appear to discuss questions of whether to supplement the record or to permit consideration of extra-record materials in the same vein. In any event, the result of supplementation or consideration of extra-record evidence is the same. *See* Custer County Action Ass'n v. Garvey, 256 F.3d 1024, 1028 n. 1 (10th Cir. 2001) (discussing extra-record exceptions to the general rule that only the administrative record will be reviewed in deciding petitioners' request to supplement the administrative record), *cert. denied,* 534 U.S. 1127 (2002); Lands Council v. Powell, 395 F.3d 1019, 1029-1030 (9th Cir. 2005) (discussing extra-record submissions and supplementation of administrative record).

§ 636(b). Under Rule 72(a), when a magistrate judge rules on nondispositive matters and objections are filed, the district court reviews the magistrate's ruling under the "clearly erroneous or contrary to law standard." This standard requires that the reviewing court affirm the magistrate's decision unless it "is left with the definite and firm conviction that a mistake has been committed." Center for Biological Diversity, 636 F. Supp. at 1158 (internal citation omitted).

It is not entirely clear from Defendants' brief which legal standard they urge the Court to apply. Plaintiffs, however, assert that a *de novo* review is proper. The Court determines that the appropriate standard on review is somewhat more limited. The reviewing judge should consider the magistrate's findings of fact under a clearly erroneous standard and review only the magistrate's legal conclusions *de novo*. Accordingly, the Court has reviewed those portions of Judge Martinez's legal conclusions which Plaintiffs challenge under the *de novo* standard.

## II.     Administrative Record and/or Extra-Record Evidence

When determining whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the general rule requires the district court to review the "whole record" or the "full administrative record that was before all decision makers . . . at the time of the decision." Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993) (internal citations omitted). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Id. (*citing* Camp v. Pitts, 411 U.S. 138, 142 (1973). "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." Id. (internal citations omitted). *See also* Federation of Fly Fishers, et al. v. Daley, 131 F. Supp. 2d 1158, 1161-62

(N.D.Cal. 2000) (APA restricts court's review of agency action from consideration of any evidence outside the administrative record available to the agency at the time of the challenged decision).

Part of the rationale for requiring the reviewing court to base its decision on the full record that was before the agency when it made its decision is to prevent the agency from supplementing the district court with *post hoc* rationalizations for its decision.  Bar MK Ranches, 994 F.2d at 739-740. Moreover, the Court is not empowered to substitute its judgment for that of the agency, or to substitute reasons for the agency's decisions that were not in the administrative record.  Citizens to Preserve Overton Park, 401 U.S. 402, 416 (1971), *abrogated on other grounds by*, 430 U.S. 99 (1977); Arizona Cattle Growers' Ass'n v. United States Fish and Wildlife, 273 F.3d 1229, 1236 (9th Cir. 2001) (internal citation omitted).

> If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision. . . . To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires the review of "the whole record." . . . To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations . . . .

Walter O. Boswell Memorial Hospital v. Heckler ,et al., 749 F.2d 788, 792 (D.C. Cir. 1984).  *See also* Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1580 (10th Cir. 1994) (district court misapplied the "arbitrary or capricious" standard when it relied on *post hoc* rationalizations of counsel or when it attempted itself to supply a reasoned basis for the agency action in question, without regard to the contents of the administrative record); Fund for Animals, et al. v. Williams, 245 F. Supp. 2d 49, 54-55 n.5 (D.D.C. 2003) (courts would be tempted to second-guess agency decisions if permitted to supplement the record).

Notwithstanding the general rule limiting review to the administrative record before the agency when it made its decision, there are exceptions that permit a court to consider "extra-record" evidence. The reviewing court, however, may go outside the administrative record only for limited purposes. Franklin Savings Ass'n v. Director, Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991), *cert. denied*, 503 U.S. 937 (1992). "[A]ny exception to this general rule against the use of extra-record materials must be extremely limited." American Mining Congress, 772 F.2d at 626. Possible justifications that permit review of extra-record materials are:

> (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong.

Id. (internal citations omitted). In Franklin Savings Ass'n, the Tenth Circuit noted these exceptions to the general rule against use of extra-record materials:

> Where the administrative record fails to disclose the factors considered by the agency, a reviewing court may require additional findings or testimony from agency officials to determine if the action was justified . . . ; or where necessary for background information or for determining whether the agency considered all relevant factors including evidence contrary to the agency's position . . . ; or where necessary to explain technical terms or complex subject matter involved in the action . . . .

934 F.2d at 1137-38 (internal citations omitted).

Although not binding on this Court, the Ninth Circuit, in addressing a similar question, observed that extra-record evidence should not be considered to determine the correctness or wisdom

of the agency's decision.  Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980).  The Ninth Circuit also concluded that extra-record evidence may be permissible "when plaintiffs make a showing of agency bad faith."  National Audubon Soc. v. U.S. Forest Serv., 46 F.3d 1437, 1447 n. 9 (9th Cir. 1993).  More recently, the Ninth Circuit advised that these extra- record exceptions, while "widely accepted," are also "narrowly construed and applied."  Lands Council, 395 F.3d at 1030.  The extra-record exceptions "operate to identify and plug holes in the administrative record."  Id.  The District of Columbia trial court reasoned that the extra-record exception does not apply where the plaintiffs fail to demonstrate that the agency acted in bad faith or that the record was so bare as to prevent effective judicial review.  Fund for Animals, 245 F. Supp. 2d at 56.

## Analysis

### I.       Meeting Minutes and Newspaper Article

This proposed extra-record evidence concerns a meeting held by the New Mexico State Game Commission in August 2004, several years after the FWS made its finding regarding the cutthroat trout.  [Doc. No. 48, Exs. B. and C.]  At the meeting, the Commission discussed the use of piscicides (fish toxicants or poisons) in the waters of the state for purposes of restoration of native species, including the Rio Grande Cutthroat Trout.  The meeting minutes reflect a discussion of whether the beneficial attributes of using piscicides for restoration of native species in the state's water ways outweighed potential harm to certain animal life or the environment.  [Ex. B.]

According to the newspaper article published after the meeting, the fish poison had been used for more than 22 years in the state's streams and rivers, but the Commissioners decided by a narrow margin to block the use of fish poisons in the state's water ways.  [Ex. C.]  This decision was made notwithstanding the independent recommendations of every state and federal agency that issued an

8

opinion on the matter. [Ex. C.]  Specifically, Larry Bell, the assistant regional director of external affairs for the U.S. FWS, told the commission at the Aug. 18 vote that the state's use of the poison was probably the leading reason Rio Grande cutthroats are not already on the federal Endangered Species List. [Ex. C.]  While the newspaper attributes this statement to Mr. Bell, the actual meeting minutes show only that Mr. Bell was present and that his agency fully supported the use of piscicides as an aid in restoration and recovery and believed its appropriate use should continue. [Ex. B, p. 13.]

Plaintiffs present three arguments as to why the 2004 minutes and newspaper article should be considered by the Court.  First, in a footnote [Doc. No. 56, n. 2], they claim that the documents are subject to judicial notice and can be considered, regardless of whether they are considered extra-record evidence that is properly before the Court.  The Court rejects this argument.  This argument was never briefed nor presented in the underlying briefs to the Magistrate Judge.  It is inappropriate to raise new issues for the first time in objections to a magistrate judge's ruling.  *See* Marshall v. Chater, 75 F.3d 1421, 1426-27 (10th Cir. 1996); Tracy v. Addison, No. 00-6452, 16 Fed. Appx. 928, 2001 WL 901142 at *2 (10th Cir. Aug. 10, 2001), *cert. denied,* 535 U.S. 1022 (2002).

Plaintiffs also raise a procedural argument that the Magistrate Judge should have granted Plaintiffs' motion to permit this extra-evidence record because Defendants never filed a response to their motion.  Moreover, Defendants' similar motion to strike did not refer to this evidence.  Thus, Plaintiffs assert that under the local rules of this court, Defendants' lack of response constituted consent to grant their motion.  D.N.M. LR-Civ. 7.1(b).

In her well-reasoned opinion, the Magistrate Judge observed that Defendants failed to file a response in opposition to Plaintiffs' motion, and she also carefully noted that the local rules authorize a court to grant a motion under those circumstances.  Notwithstanding the rule, however, the

Magistrate Judge elected to review and decide Plaintiffs' motion on the merits. [Doc. No. 53, p. 2, n. 4.] With respect to this procedural challenge by Plaintiffs, Judge Martinez's decision to decide the motion on the merits cannot be considered "clearly erroneous or contrary to law." This is especially true with respect to the Court's responsibility in cases such as this to ensure that the proper administrative record is before it. Thus, the Court overrules Plaintiffs' procedural objection.

Plaintiffs's final argument is that the meeting minutes and newspaper articles fit within the extra-record exception as evidence that came into existence after the agency acted that demonstrates the agency's actions were right or wrong. Plaintiffs also contend that this evidence is relevant to show that the FWS's reliance on regulatory mechanisms (i.e., the use of piscicides) and/or on the projected use of future or voluntary regulatory measures is wrong.[5]

There is no question that the meeting minutes and newspaper article came into existence after the FWS made its finding. In addition, the Magistrate Judge examined Plaintiffs' position, noting that the use of piscicides was relevant [Doc. No. 53, pp. 10-11], as demonstrated by the FWS's discussion of piscicides in its finding:

> Several stream renovation projects are planned in the upcoming years. One obstacles that must be recognized is public resistance to the use of piscicides such as antimycin. Antimycin is an antibiotic that is an

---

[5]To decide whether this evidence demonstrates that the agency's actions or findings actually were right or wrong would be to decide the ultimate question, which the Court does not address in this opinion. However, Plaintiffs' assertion that FWS's reliance on an "existing regulatory mechanism was wrong" appears to be incorrect. It is true that successful arguments have been made that an agency may not rely on plans for future actions. Federation of Fly Fishers, 131 F. Supp. 2d at 1164-65 ("Sections 1533(a)(1) and (b)(1) [of the EPA] plainly do not allow the Secretary to consider a nonexistent plan or speculate about future events . . . .") However, "[the] [d]efendants correctly note that the Secretary must consider both existing regulatory measures and any other efforts being made by the State to preserve a candidate species . . . ." Id. When the FWS made its finding in 2002, the use of piscicides was a current mechanism being used. Thus, it appears that it was proper under the EPA to have relied on that existing mechanism. 16 U.S.C. §§ 1533(b)(1)(B), 1533(a)(1)(D); Oregon Natural Resources Council v. Daley, 6 F. Supp. 2d 1139, 1153-54 (D. Oreg. 1998)(agency may only consider conservation efforts that are currently operational, not those promised to be used in the future). Whether the existing measures were adequate is another question that the Court does not decide here.

> effective fish toxicant. It can be neutralized at stations outside the treatment area. The public must be educated and support range expansion of RGCT, or restoration efforts could be undermined.

67 F.R. at 39945. In its finding, the FWS also stated that it had discussed specific threats to the RGCT including nonnative salmonids that either hybridize or compete with RGCT, habitat fragmentation, livestock grazing, timber harvest, overutilization, disease, inadequacy of existing regulatory mechanisms, fire, electrofishing, and opposition to the use of fish poisons (e.g., piscicides). The FWS concluded, however, that the 13 core populations were not threatened by any of the identified threats, either alone or in combination. 67 F.R. at 39946. In so concluding, the FWS noted that while it had discussed projected conservation actions, it did not rely on those future actions for purposes of determining the current status of the RGCT or the adequacy of current management actions to alleviate threats to the fish. Id.

After conducting a *de novo* review, the Court overrules Plaintiffs' objections with respect to its position that the meeting minutes and newspaper article qualify as permissible extra-record evidence. In examining the circumstances of this case, the Court will adhere to the general rule that "the focal point for judicial review should be the administrative record already in existence" rather than additional new evidence never considered by the FWS when it reached its decision. This approach is consistent with the view that exceptions to the general rule are "extremely limited." See Voyageurs National Park Association v. Norton, 381 F.3d 759, 766 (8th Cir. 2004) ("These exceptions apply only under extraordinary circumstances, and are not to be casually invoked unless the party seeking to depart from the record can make a strong showing that the specific extra-record material falls within one of the limited exceptions."); Lands Council, 395 F.3d at 1030 ("Were the

11

federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect de novo rather than with the proper deference to agency processes, expertise, and decision-making.")

In addition, to permit extra-record evidence would, in a sense, suggest that the administrative agency be prescient as to what might happen to a conservation measure that was in place when it made its decision. As discussed *infra*, the agency cannot use promises of future proposed or contemplated actions as an excuse for not making a determination based on the existing record. It would be incongruent to permit Plaintiffs to rely on subsequent changes to existing conservation measures as a *post hoc* rationalization for why the earlier agency decision was wrong. Here, the agency recognized that it needed to further educate the public about the need for certain measures. It could not have predicted after 22 years of use, however, that the use of piscicides would be eliminated.

The Court finds, therefore, that this information that developed later could not shed light on whether the FWS's finding two years earlier was right or wrong. To find otherwise would mean that any existing conservation measure that changes subsequent to the finding might be considered permissible extra-record evidence. It encourages second guessing based on the advantages of hindsight. Moreover, it opens the door to the agency also supplying *post hoc* rationalizations for its decisions. Finally, it would encourage the reviewing court to substitute its judgment for that of the administrative agency rather than determining whether there was substantial evidence to support the agency's determination under § 706 of the APA.

In addition, this is not a case where the administrative record fails to disclose the factors considered by the FWS, nor is it a case where the Court determines that additional background

12

information is needed.  Further, the Court does not find that the record is deficient due to the agency ignoring relevant factors that were left out of the formal record.  Indeed, the FWS considered and discussed in its finding the use of piscicides in its conservation efforts.  Moreover, there is no evidence that the agency acted in bad faith.  Finally, this certainly is not a case where the record is so bare as to prevent judicial review.

The Tenth Circuit case on which Plaintiffs rely does not convince the Court otherwise.  In <u>Valley Community Preservation Comm'n v. Mineta</u>, 373 F.3d 1078, 1089 n.2 (10th Cir. 2004), the Tenth Circuit found that the transferor court's consideration of a letter, created after the agency decision at issue, and in denying a motion for TRO, was not an abuse of discretion.  Thus, the legal posture and issues in <u>Valley Community Preservation Comm'n</u> were distinguishable from those in the present matter.  Similar to <u>Valley Community Preservation Comm'n</u>, although not cited by Plaintiffs, the Ninth Circuit held that the trial court did not abuse its discretion in striking a post-decision letter, that was dated over a month after the forest service completed its decision.  <u>Southwest Center for Biological Diversity v. U.S. Forest Service</u>, 100 F.3d 1443, 1450-51 (9th Cir. 1996).  In that case, the court explained that the letter "constitutes post-decision information, which may not be advanced as a new rationalization either for sustaining or attacking an agency's decision."

For all of the above-stated reasons, the Court overrules Plaintiffs' objections to the Magistrate Judge's ruling on the proposed extra-record evidence of the Game Commission meeting minutes and the related newspaper article.  They will not be considered in addition to the administrative record and the supplementation of that record.

13

**II.     Declaration of Mr. Frissell**

Mr. Frissell's declaration first details his experience in the field and his pertinent technical research and work. [Doc. No. 35.] Much like a proposed expert's affidavit, Mr. Frissell indicates the materials he reviewed in preparation of his affidavit, including the FWS's finding, the basis for its finding, and Plaintiffs' Complaint. Mr. Frissell then sets forth his disagreement with a number of the FWS bases for its finding, including the FWS's use of the 2,500-individual threshold. He states that the FWS "assessments of population size are likely biased high." Mr. Frissell argues that the FWS is "serious remiss in failing to account for catastrophe in its population assessment." He contends that the FWS "threw up hits hands" when it found that it could not determine if fire was a threat to the 13 pure, stable, and secure populations of RGCT because of the unpredictability of the occurrence and locations of fires. Mr. Frissell contends that the probability of wildfire affecting the 13 basins can be statistically estimated. Moreover, he urges that FWS's attempt to discount catastrophic extinction risk to the RGCT is "arguable." Mr. Frissell states that "[a] high proportion of these basins could experience severe wildfire within a short period of years . . . ." "Even when populations do not suffer extinction from catastrophe, they may experience permanent harm." Mr. Frissell also asserts that the FWS engaged in faulty logic for its 2,500-individual "safe" threshold in its assessment. Mr. Frissell disagrees with the FWS's finding that whirling disease is not a substantial threat to the RGCT and further contends that FWS failed to rely on the best available science in concluding that whirling disease was not a threat to the continued existence of the RGCT

Plaintiffs object to the Magistrate Judge's finding that the declaration of Mr. Frissell is nothing more than expert testimony that differs from the findings of the agency. Plaintiffs argue that they did not submit the Frissell declaration merely to demonstrate the FWS completely failed to address

certain issues, nor for purposes of providing a "contrary expert opinion." Instead, Plaintiffs assert that Mr. Frissell's declaration demonstrates that FWS "completely ignored evidence – the best scientific information available – that was contrary to its position and conclusions."

First, the Court observes that the Magistrate Judge did not exclude Frissell's declaration merely because she found that the FWS considered the issues Mr. Frissell identified in his declaration. She carefully considered and ultimately rejected Plaintiffs' argument that Mr. Frissell detailed relevant scientific evidence that FWS failed to consider.

Second, the Magistrate Judge appropriately referred to Tenth Circuit case law finding that proposed expert opinion than essentially serves to contradict the agencies's conclusion does not support admission of extra-record evidence. Lee v. United States Air Force, 354 F.3d 1229, 1242 (10th Cir. 2004). "It is well established that 'agencies' are entitled to rely on their own experts so long as their decisions are not arbitrary and capricious.'" Id. (*citing* Custer County, 256 F.3d at 1036) (additional internal citations omitted).

> "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." The court is not empowered to resolve conflicts between experts or replace the [agency's] experts with those of plaintiffs.

Riverhawks v. Zepeda, 228 F.Supp.2d 1173, 1184-85 (D. Oreg. 2002) (internal citations omitted).

The Court agrees with the Magistrate Judge to the extent that she found it improper to permit extra-record evidence that amounts to nothing more than conflicting expert opinion. However, at this stage of the proceeding, the Court is not yet in the position to determine whether the agency considered the relevant factors and articulated a rational connection between the facts found and the

15

choice made or whether the FWS failed to use the best available scientific information as required by § 16 U.S.C. 1536(a)(2). Thus, the Court finds that the most practical approach is to overrule Plaintiffs' objections as to those portions of Mr. Frissell's declaration that contain opinion evidence, of which there are many, and to consider only those portions that provide background information on the issue of whether the FWS used the "best available scientific information" in reaching its decision.

    IT IS THEREFORE ORDERED that Plaintiffs' Objections to the Magistrate Judge's Memorandum Opinion and Order [Doc. No. 56] are overruled in part and sustained in part, as described herein.

                                                                      _____
                                                                      Lorenzo F. Garcia
                                                                      Chief United States Magistrate Judge